70150. SEAWHEELS, INC. et al. v. BANKERS & SHIPPERS INSURANCE COMPANY OF NEW YORK.
70151. YOUNG v. BANKERS & SHIPPERS INSURANCE COMPANY OF NEW YORK.
(333 SE2d 650)

McMURRAY, Presiding Judge.

Declaratory judgment. Little Walter Young died from injuries which he sustained in an August 15, 1978, motor vehicle collision which occurred in Brunswick, Georgia. Thereafter, on October 12, 1979, Ola Mae Young, the mother of Little Walter Young, brought a wrongful death action against James L. Quick, Seawheels, Inc., Peter S. Weeks and C. B. C. Leasing Corporation (C. B. C.). In her com-

plaint, Ola Mae Young alleged that the death of her son was proximately caused by the negligent conduct of Quick, a servant of Seawheels, Inc., and Weeks, a servant of C. B. C. Judgment was demanded against all of the defendants for the wrongful death of Little Walter Young. Service of process was made upon Weeks and C. B. C., non-resident defendants, by serving the Secretary of State.

C. B. C. was a motor common carrier. On December 8, 1977, Bankers and Shippers Insurance Company of New York (Bankers and Shippers) issued a policy of indemnity insurance to C. B. C. in lieu of a motor common carrier security bond. (See in this connection former Code Ann. § 68-612 (now OCGA § 46-7-12, effective November 1, 1982)). The policy was in force at the time (1978) of the motor vehicle collision which resulted in the death of Little Walter Young. In pertinent part under the section captioned "CONDITIONS," the policy reads as follows:

"4. Insured's Duties in the Event of Occurrence, Claim or Suit: (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative. (c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

"5. Action Against Company: No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Bankers and Shippers received notice of the collision on August 25, 1978. (Several days later, the insurer received an incomplete loss report from Dixie Insurance Agency, C. B. C.'s agent.) Thereafter, Bankers and Shippers began to investigate the circumstances of the

occurrence. An adjuster in Savannah, Georgia was assigned to the case. He examined the scene of the collision, obtained photographs and police reports, looked for witnesses, and spoke with at least one independent witness. Bankers and Shippers' efforts to contact C. B. C. were hampered by the fact that the Miami, Florida address which C. B. C. originally provided was no longer correct. Ultimately, Bankers and Shippers determined that C. B. C. had moved its offices to Farmingdale, New York.

Thereafter, several meetings took place between Bankers and Shippers' adjuster and Mario Curatolla, a C. B. C. representative. C. B. C. was successful in arranging a meeting between the adjuster and Harry Sterns, a passenger in the truck driven by Weeks at the time of the collision. Bankers and Shippers obtained a signed statement from Sterns concerning the collision. Bankers and Shippers was unable to contact Peter S. Weeks. C. B. C. gave the insurer the address of Weeks' parents, but they refused to inform the insurer of Weeks' whereabouts.

On December 3, 1979, Bankers and Shippers received a service copy of the lawsuit filed by Ola Mae Young. The papers had been forwarded to the insurer by C. B. C. The lawsuit was already in default when the insurer received the copy of the complaint. Bankers and Shippers immediately retained counsel to defend C. B. C. and Weeks in the wrongful death action. Through that counsel, C. B. C. and Weeks successfully moved the court to open the default. Thereupon, defensive pleadings were filed on behalf of defendants C. B. C. and Weeks.

On January 10, 1980, Bankers and Shippers brought this declaratory judgment action, naming Ola Mae Young, James L. Quick, Seawheels, Inc., Peter S. Weeks and C. B. C. as defendants. In its lawsuit, Bankers and Shippers alleged that C. B. C. and Weeks failed to cooperate in the defense of the wrongful death action and to immediately forward the summons and complaint to Bankers and Shippers. Accordingly, the insurer sought a declaration that it is not obligated to defend C. B. C. or Weeks or to respond to a money judgment obtained against C. B. C. or Weeks.

The case was tried by the court sitting without a jury. Upon the conclusion of the trial, the court determined that C. B. C. and Weeks failed to comply with the notice requirements set forth in the policy of insurance and that, therefore, Bankers and Shippers was relieved of its obligation to defend the wrongful death action and to respond to any judgment entered against its insured therein. These appeals followed. *Held*:

1. The motions to dismiss the appeals are not meritorious. See Rule 14 of the Rules of the Court of Appeals, effective September 1, 1981, which rule was in effect at the time the enumeration of error

and briefs were to be filed and which provided that the failure to comply with an order *directing* the filing of a brief may result in dismissal of the appeal. No such order was entered in these appeals.

2. With regard to common carriers, former Code Ann. § 68-612 (now OCGA § 46-7-12 (effective November 1, 1982)), provided in part: "Bond; indemnity in lieu of bond; self-insurance. No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, for the protection . . . in cases of vehicles transporting freight, to secure the owner or person entitled to recover therefor against loss or damage to such freight for which the motor common carrier may be legally liable; and for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The commission [Georgia Public Service Commission] shall approve, determine and fix the amount of such bonds, and shall prescribe the provisions and limitations thereof, and *such bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby.* The commission may, in its discretion, allow the holder of such certificate to file, in lieu of such bond, a policy of indemnity insurance in some indemnity insurance company authorized to do business in the State of Georgia, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the commission. . . . It shall be permissible under this Chapter for any person having a cause of action arising hereunder in tort or contract to join in the same suit the motor carrier and its surety in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action whether arising in tort or contract." (Emphasis supplied.)

"According to the language and patent intendment of the statute . . . the bonds provided for therein are solely for the benefit of those persons who by reason of the negligence of the carrier, its servants or agents, may have a cause of action for damages (*Laster v. Maryland Casualty Co.*, 46 Ga. App. 620, 168 S. E. 128; *LaHatte v. Walton*, 53 Ga. App. 228, 184 S. E. 742), such bonds being 'for the benefit of and subject to suit or action thereon by any person who shall sustain *actionable injury* or loss protected thereby.' (Italics ours.) If in the discretion of the commission the carrier is allowed to substitute a policy of 'indemnity' insurance, such 'policy must substantially conform to all of the provisions' of the statute 'relating to bonds.' This does not mean that the policy of insurance shall be substantially like the bond in all respects, but it does mean that it shall be substantially like the bond in that such policy of insurance 'shall be for the benefit of and subject to suit or action thereon by any person who shall sustain ac-

tionable injury or loss protected thereby.' This being true, the policy of insurance is not one of indemnity against loss as that term is generally understood; but is a direct and primary obligation to any person who shall sustain actionable injury or loss by reason of the negligence of the insured in the operation of his motor vehicles insured under the policy. The sustaining of *actionable injury* is, under the statute, the only condition precedent to a suit on the policy." *Great American Indem. Co. v. Vickers*, 183 Ga. 233, 236 (188 SE 24).

It follows that Bankers and Shippers is absolutely liable for any unsatisfied judgment which may be obtained against its insured whether or not its insured breached the conditions of the policy. As the court observed in *Spicer v. American Home Assur. Co.*, 292 FSupp. 27, 30-31 (N.D. Ga. 1967), " 'The primary purpose of requiring a bond, policy of insurance or other security as a condition to the operation of public service motor vehicles for hire is for the protection of the public, by assuring those who are injured, in person or property, through the negligent operation of such vehicles, compensation for the injuries or damages sustained.' 60 C.J.S. Motor Vehicles § 111 (b). . . . [W]here the statutory regulation requiring the security bond or policy of liability insurance provides that it shall be conditioned for payment directly to the injured person — or that such person shall have his right of action on the bond or policy, such provisions shall be construed as part of the policy, and gives to the person so injured an original independent right of action to recover directly from the surety or insurer on the bond or policy *regardless of insured's concurrent* breach of the bond or policy. 60 C.J.S. Motor Vehicles § 117 (a)." See also *Young v. Allstate Ins. Co.*, 248 Ga. 350 (282 SE2d 115); *Anderson v. Southeastern Fid. Ins. Co.*, 251 Ga. 556 (307 SE2d 499).

Bankers and Shippers asserts the *Spicer* rationale is inapplicable in the case sub judice because Ola Mae Young did not bring an action directly against it. We disagree. "The plaintiff could have sued the driver alone, or the motor carrier alone, or she could have sued them jointly. She could have sued the insurance carrier alone or, as authorized by the act, she could have joined the motor carrier and the insurance carrier in the same action, irrespectively of whether it sounded in tort or in contract." *Tarrant v. Davis*, 62 Ga. App. 880, 884 (10 SE2d 636). Thus, the insurance carrier cannot contend that it should be relieved of liability for any judgment rendered against its insured because the plaintiff chooses to withhold suit against it until after the entry of judgment against its insured.

*Judgment reversed. Banke, C. J., and Benham, J., concur.*

Decided July 3, 1985 —
Rehearing denied July 17, 1985 —

*Charles W. Brannon, Jr.*, for appellants (case no. 70150).
*M. McNeill Holloway III*, for appellant (case no. 70151).
*Peter Catlin, Thomas J. Mahoney, Jr., Charles W. Brannon, Jr., Albert Fendig, Jr., John G. Kennedy, Terry L. Readdick*, for appellee.